# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIE HULL, Petitioner, v. JULIE WARD, Warden, Respondent. | 1:06cv0715 LJO DLB HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Document 1) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**[1]

On November 22, 2000, in the Stanislaus County Superior Court, a jury convicted Petitioner of two counts of sale of cocaine base (Health & Saf. Code § 11352(a)), and one count of maintaining a place for the sale of controlled substances (Health & Saf. Code § 11366). A mistrial was declared on one count of sale of cocaine base and one count of possession of a firearm by a felon (Pen. Code § 12021(a)).

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

Six prior convictions were also alleged against Plaintiff: three prior convictions for narcotics-related offenses (Health & Saf. Code § 11370.2) and three prior serious and/or violent felony convictions within the meaning of the three strikes law (Pen. Code § 667(b)-(I)). The substantive offenses and prior conviction allegations were not bifurcated and were tried together to the same jury. After the jury returned verdicts on the substantive offense, however, the court thanked the jury for their service and released them from their admonitions. Once the parties and jurors left the courtroom, the court clerk entered the jury room to collect the exhibits. The clerk discovered the verdict forms for all the prior conviction allegations. The verdict forms stated that the jury found that Plaintiff "was" (as opposed to "was not") convicted of the prior convictions, but they were not signed or dated.

Over defense counsel's objections, the court reconvened the jury on November 29, 2000. The court advised the jury about the problem with the verdict forms. The foreperson advised the court that the jury previously reached verdicts on the prior conviction allegations but failed to sign, date and return the verdict forms to the court when it returned the verdicts on the charged offenses. The court instructed the jury to return to the jury room to sign the verdicts. The jury returned, finding all prior conviction allegations to be true.

On April 10, 2001, after denying Petitioner's post-trial motions, Petitioner was sentenced to an aggregate term of 68 years to life in state prison.

Petitioner appealed his conviction and sentence to the Fifth District Court of Appeal. On March 14, 2003, the court reversed the conviction for maintaining a place for the sale of controlled substances. The court also struck the jury's findings on the prior conviction allegations because it found that the trial court lacked jurisdiction to reconvene the jury to resolve the incomplete verdict. The matter was remanded to the trial court "for resentencing and such further proceedings as may be appropriate." Lodged Doc. 1, at 49.

On remand, Petitioner objected to retrial on the prior conviction allegations, but the court denied the motions and found that a retrial was proper under the circumstances. A jury was empaneled and heard evidence on the prior conviction allegations. On September 19, 2003, the jury found the prior conviction allegations to be true. On October 23, 2003, after denying


Petitioner's motion to strike the priors, the court sentenced him to a total of 34 years to life imprisonment.

Petitioner appealed the retrial of his prior conviction allegations to the Fifth District Court of Appeal. On November 30, 2004, the court affirmed the trial court's actions. The court denied a petition for rehearing on December 16, 2004.

On January 6, 2005, Petitioner filed a petition for review with the California Supreme Court. The court denied the petition on March 17, 2005.

Petitioner subsequently filed two petitions for writ of habeas corpus with the Stanislaus County Superior Court. The petitions were denied on January 5, 2006, and February 24, 2006.

Petitioner also filed a petition for writ of habeas corpus with the Fifth District Court of Appeal. The court denied the petition on April 25, 2006.

On May 31, 2006, Petitioner filed his final petition for writ of habeas corpus with the California Supreme Court. The court denied the petition on January 17, 2007.

Petitioner filed the instant federal petition on June 8, 2006. He argues that (1) the retrial of his prior convictions violates California Penal Code section 1023 and his right to be free from double jeopardy; (2) the trial court abused it's discretion in failing to strike the prior convictions; and (3) his sentence constitutes cruel and unusual punishment.

Respondent filed its answer on November 22, 2006.

Petitioner filed his traverse on February 5, 2007.

## STATEMENT OF FACTS[2]

The Modesto Police Department supervised an informant who made two controlled purchases of cocaine base from Petitioner. On July 29, 1999, the informant contacted Petitioner at his duplex and purchased $20 of cocaine base from him. Later that evening, the informant again contacted Petitioner at his duplex and purchased $20 of cocaine base. The informant wore a concealed radio transmitter during both incidents, and the transactions were monitored and tape-recorded by the police.

---

[2] This statement of facts is taken from the Fifth District Court of Appeal's November 30, 2004, opinion.

On August 8, 1999, the informant conducted a controlled purchase with another subject, who escorted the informant to Petitioner's duplex to complete the transaction. The police subsequently arrested Petitioner at his duplex, which he shared with several other people, and recovered rock cocaine, marijuana, narcotics paraphernalia, and an unloaded .22-caliber revolver.

**DISCUSSION**

A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Petitioner challenges his conviction in Stanislaus County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B. Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus

will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

///

///

///

///

///

///

///

///

C. Retrial on Prior Convictions

Petitioner argues that the trial court's decision to retry him on the prior conviction allegations was barred by California Penal Code section 1023[3] and violated the Double Jeopardy Clause of the United States Constitution.

The Supreme Court has specifically held that the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context. In Monge v. California, 524 U.S. 721, 728 (1998), the Supreme Court distinguished sentencing proceedings from the actual prosecution, explaining that they do not "place a defendant in jeopardy for an 'offense,' and they have not been 'construed as additional punishment for the previous offense; rather, they act to increase a sentence 'because of the manner in which [the defendant] committed the crime of conviction.'" (internal citations omitted). "An enhanced sentence imposed on a persistent offender thus 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" Id. Moreover, sentencing decisions favorable to the defendant cannot be analogized to an acquittal. While overturning a conviction based on insufficient evidence is comparable to an acquittal and the Double Jeopardy Clause prohibits a second trial, a similar failure of proof in a sentencing proceeding "does not have the qualities of constitutional finality that attend an acquittal." Id. at 729. Based on this jurisprudence, the Supreme Court affirmed the California Supreme Court's decision that retrial on prior conviction allegations, where the appellate court determined that there was insufficient evidence to trigger the sentence enhancement, did not violate the Double Jeopardy Clause. Id. at 734.

Apprendi v. New Jersey, 530 U.S. 466, 499-523 (2000), reaffirms the continued vitality of Monge as applied to recidivism enhancements. In Apprendi, the Supreme Court held the

[3] Penal Code section 1023 states as follows:

When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading.

defendant was entitled to a jury trial with proof beyond a reasonable doubt in the assessment of those facts that increased his potential range of penalties.  The court, however, expressly exempted recidivism statutes from this rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.  With that exception, we endorse the statement of the rule ..." Id. at 490.

In reviewing Petitioner's claim on appeal, the Fifth District Court of Appeal performed a thorough and exhaustive analysis of the Supreme Court's holdings in both Monge and Apprendi and concluded that Petitioner was properly retried on the prior conviction allegations.  This holding was necessitated by federal precedent and was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  Lodged Doc. 5, at 18-25.

In attempting to undermine the reasoning of the Court of Appeal's finding, Petitioner argues that the finding was equivalent to an acquittal.  In its March 14, 2003, opinion, the Court of Appeal found, in part, that the trial court violated California Penal Code section 1025 and 1164 in discharging the jury without receiving complete verdicts, and that it did not have jurisdiction to reconvene the jury to resolve the problem.  These findings were made in connection with Petitioner's sentencing, however, and do not cast doubt on Petitioner's underlying conviction.

To the extent that Petitioner relies on California Penal Code section 1023 for habeas relief, his claim is not cognizable in federal habeas corpus.  Habeas corpus relief is not available to correct alleged errors in the state court's application or interpretation of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Middleton v. Cupp, 768 F.2d 1083, 1084-85 (9th Cir.1985).

D.    Dismissal of Prior Convictions

Next, Plaintiff argues that the trial court abused its discretion in denying his motion to strike his "forty year old 'strike convictions.'"  Petition, at 7.  In support of his argument, he contends that the court failed to consider his age and medical history, and that neither the current offense nor the prior conviction was violent.

Again, federal habeas corpus relief is not available to correct errors in the application or interpretation of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Only if an error in state proceedings involves "fundamental fairness" does it rise to the level of a due process violation cognizable in a habeas action. Id at 72-73. Whether a California judge properly sentenced Petitioner is generally a question of state law and not cognizable in a federal habeas corpus action. Miller v. Vasquez, 868 F.2d 1116, 1118 (9th Cir. 1989). Petitioner's claim is therefore not cognizable as it is a matter of state law.

In any event, even if the claim is reviewable, Petitioner has failed to demonstrate that the state court's decision was contrary to, or an unreasonable application of, clearly established Supreme Court authority. The trial court's actions and the decision of the Court of Appeal show that the denial of his motion to strike his priors was not fundamentally unfair. The Court of Appeal first summarized Petitioner's record as set forth in the probation report:

> In 1962, Petitioner (born 1942) was convicted of three counts of robbery and sentenced to five years to life in state prison. These convictions were the basis for the strikes in this case. In 1966, he was convicted of felony forgery (§ 470) and sentenced to six months to 14 years in prison.
>
> In 1975, Petitioner was convicted of misdemeanor reckless driving (Veh. Code, § 23103), and placed on probation. In 1976, he was convicted of misdemeanor driving under the influence (former Veh. Code, § 23102, now Veh. Code, § 23152; see *In re Kevin G.* (1985) 40 Cal.3d 644, 647; *Fox v. Alexis* (1985) 38 Cal.3d 621, 628), and sentenced to eight days in jail. In 1977, he was convicted of misdemeanor battery (§ 242) and fined.
>
> In 1978, Petitioner was convicted of felony possession of heroin for sale (Health & Saf. Code, § 11351) and sentenced to three years in prison. In 1982, he was convicted of felony possession of heroin (Health & Saf. Code, § 11350), criminal proceedings were suspended, and he was committed to California Rehabilitation Center (CRC). He was also convicted of two counts of sale of heroin (Health & Saf. Code § 11352), criminal proceedings were suspended, and he was committed to CRC.
>
> In 1987, Petitioner was convicted of misdemeanor being under the influence of a controlled substance (Health & Saf. Code, § 11550) and placed on probation. In 1991, he was again convicted of misdemeanor being under the influence and sentenced to 90 days in jail. Petitioner was returned to custody on approximately five separate occasions, as a result of parole violations, between 1985 and 1991.
>
> The probation report stated Petitioner suffered from high blood pressure, active Hepatitis A, B, and C, and had two angioplasties as a result of a heart condition. He had not been employed since the early 1970's but had worked at odd jobs. His job skills included auto mechanics and detailing, welding, dry cleaning, and farm labor. Petitioner received disability benefits from 1989 and 1995 as a result of his drug addiction. Petitioner admitted he was an alcoholic and consumed two "5ths" of Thunderbird every

> day since he was 16 years old. He previously smoked marijuana and injected heroin and cocaine on a daily basis, but quit in 1991 when he suffered an overdose. Petitioner admitted he continued to smoke approximately $100 worth of cocaine every day. "[Petitioner] admitted to selling cocaine to support his habit, however, he indicated the majority of the cocaine he consumes is given to him by friends."

Lodged Doc. 5, at 27-28.

The Court then reviewed the trial court's consideration of Petitioner's motion to dismiss. During re-sentencing, the court referred to it's prior decision to deny the motion to dismiss the priors, and added that there was no basis to change its ruling. As the Court of Appeal summarized:

> The court acknowledged Petitioner's prior strike convictions were almost 40 years old, he had no new felony convictions since 1982 and misdemeanor convictions since 1991, and these factors were favorable to him. The court also noted Petitioner's prior strike convictions were for robbery, he received a maximum life term, and he had intervening felony convictions for narcotics-related offenses, which were unfavorable factors. The court further noted Petitioner's drug convictions were not violent. However, the court denied Petitioner's motion to dismiss the prior strike convictions.
>
> > "[Petitioner] has presented nothing particularly favorable about his being a normal citizen during the last ten years since his last conviction. In fact he admits he's a heroin addict and sells drug to support that habit. This confirms the evidence presented at the trial that the police suspected [Petitioner] of so doing for years and had not been able to get him before this case. This factor is unfavorable to [Petitioner].
> >
> > "Comparing these factors, the factors against striking one or more of the priors, especially the factor where [Petitioner] admits to selling drugs to support his habit which outweigh the factors favorable to strike one or more, accordingly, the motion to strike the priors on the Romero grounds are denied."

Lodged Doc. 5, at 28-29.

After reviewing the applicable state law, the Court of Appeal concluded that the trial court "carefully reviewed the entirety of [Petitioner's] criminal record, the nature of the current offenses, and his prior performance on probation, and acted to achieve legitimate sentencing objections, after a thoughtful and conscientious assessment of all relevant factors." Lodged Doc. 5, at 32. As to Petitioner's argument that his prior strike convictions were 40 years old and his instant offenses were nonviolent, the Court of Appeal explained that he "had spent the past decade as a self-employed drug dealer to support his own addictions." Lodged Doc. 5, at 32.

Based on the state courts' review of Petitioner's claim, he has failed to demonstrate that the denial of his motions to strike was fundamentally unfair. His claim is without merit and should be denied.

E.    Cruel and Unusual Punishment

In a related argument, Petitioner argues that his sentence of 34 years to life constitutes cruel and unusual punishment given his age (63 years old at the time of filing the petition), the nonviolent nature of his crime, and the age of his prior strikes and Health & Safety Code enhancements. Petitioner submits that his sentence is "equal to a death sentence or life without parole." Petition, at 7.

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment. In Rummel v. Estelle, 445 U.S. 263 (1980), the Court upheld a life sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years. Id. at 266. However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence. Id. The Supreme Court held that Rummel's sentence of life imprisonment with the possibility of parole did not violate the Eighth Amendment. Id. 445 U.S. at 365-266 (emphasis added). The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders. Id. at 278-81.

Three years later, the United States Supreme Court set forth the criteria for finding a sentence to be cruel and unusual punishment under the federal Constitution and affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist. Solem v. Helm, 463 U.S. 277 (1983). Applying the proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light

of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated. Id. at 279-81. The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in Rummel, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all. Id.

In Harmelin v. Michigan, 501 U.S. 957 (1991), the defendant received a mandatory sentence of life in prison without the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense. The U.S. Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment. Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review. Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005.

The majority of the justices in the Harmelin court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment. Harmelin, 501 U.S. at 964. The threshold for such an inference of disproportionality is high. Id. at 1001 (Kennedy, J. concurring). Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment. United States v. McDougherty, 920 F.2d 569, 576 (9th Cir.1990).

The Harmelin Court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality." Justice Kennedy stressed the serious nature of Harmelin's offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in Solem." Harmelin, 501 U.S. at 1002. Justice Kennedy further noted that the "possession, use, and distribution of illegal drugs represent 'one of the

greatest problems affecting the health and welfare of our population,'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses. Id.

In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. Id. at 1173. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." Id. The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.

In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court again reviewed its Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view that:

> There are four principles of proportionality review-the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors-that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.

Turning to Ninth Circuit case law, in Ramirez v. Castro, 365 F.3d 755 (9th Cir.2004), the Court held that a 25 year to life sentence under California's Three Strikes law for a third offense of shoplifting a $199 VCR was cruel and unusual punishment because Ramirez' criminal history was "comprised solely of two 1991 convictions for second-degree robbery obtained through a single guilty plea, for which his total sentence was one year in county jail and three years probation." Id. at 758.

Thereafter, in Rios v. Garcia, 390 F.3d 1082 (9th Cir.2004), the court distinguished the holding in Ramirez from the situation it confronted, finding that the petitioner in Rios had a "lengthy criminal history," had "been incarcerated several times," and that the prior strikes used to enhance the petitioner's sentence had "involved the threat of violence." Id. at 1086.

The Court finds that Petitioner's case does not fall within the type of "exceedingly rare" cases that would support a finding that his sentence violates the Eighth Amendment. As the Court of Appeal explained after a review of federal Eighth Amendment jurisprudence:

> We cannot say that Petitioner's sentence is grossly disproportionate to his criminal culpability. We find Petitioner's case is not extraordinary, his sentence is not invalid under the gross disproportionality analysis, and it does not shock the consciousness given the nature and circumstances of his conviction and the prior conviction allegations found true in this case.

Lodged Doc. 5, at 34.

Indeed, as set forth above, Petitioner has a lengthy criminal history spanning over 40 years. In 1962, he was convicted of three counts of robbery. While he may have committed these offenses over 40 years ago, they were not isolated incidents. Since that time, he has had numerous convictions, ranging from misdemeanor reckless driving and battery to felony forgery. Further, although his commitment offense may have been nonviolent, his crimes were certainly not victimless. Petitioner was convicted of selling rock cocaine. As Justice Kennedy explained in Harmelin, " [p]ossession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" Harmelin, 501 U.S. at 1002 (Kennedy, J., concurring) (quoting Treasury Employees v. Von Raab, 489 U.S. 656, 668 (1989) (emphasis added)); Taylor v. Lewis, 460 F.3d 1093 (9th Cir. 2006).

Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner's claim is without merit and should be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:** **December 4, 2007**

/s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE